```
              UNITED STATES DISTRICT COURT      98 OCT 30 PM 3: 39
              NORTHERN DISTRICT OF ALABAMA
                     MIDDLE DIVISION           U.S. DISTRICT COURT
                                                N.D. OF ALABAMA
```

ACCEPTANCE INSURANCE )
COMPANY, )
　　　　　　　　　　　　　　)
　　Plaintiff, )
　　　　　　　　　　　　　　)
v. ) CV-98-AR-1002-M
　　　　　　　　　　　　　　)
NATIONAL AUCTION GROUP, ) **ENTERED**
INC., )
　　　　　　　　　　　　　　) OCT 30 1998
　　Defendant. )

## MEMORANDUM OPINION

The court presently has before it a motion for summary judgment by plaintiff Acceptance Insurance Company ("AIC"). AIC seeks a declaratory judgment that it is not required to provide a defense for or to indemnify defendant, National Auction Group, Inc. ("NAG"), in a separate action brought against NAG in a Georgia state court. Jurisdiction in this court exists pursuant to 28 U.S.C. §§ 1331 and 2201.

### Factual History

NAG and three other defendants were sued by Carlie Hammond in the Superior Court of Georgia in October, 1997 (the "Hammond action"). In that suit, Hammond complains that her former friends, Lloyd and Bonnie Anderson, had wronged her in connection with the auction of a home which the Andersons owned. NAG was the auctioneer and was named as a party defendant. NAG had been issued a policy of liability insurance by AIC for the period from December 1, 1996 to December 1, 1997.

On April 27, 1998, AIC filed the present action seeking a declaratory judgment that NAG's liability insurance policy did not cover the wrongs alleged in the Hammond action and that AIC was required neither to defend nor indemnify NAG in that suit. In addition to its answer to AIC's complaint, NAG asserted a counterclaim requesting a declaratory judgment to the opposite effect.

## Discussion

AIC's policy of liability insurance does not cover claims for intentional torts. This exclusion from coverage is contained in two portions of the insurance contract. First, Section I.A.(1)(b) of the insuring agreement between AIC and NAG states that:

> This insurance applies to "bodily injury" and "property damage" only if:
>     (1) The "bodily injury" or "property damage" is caused by an "occurrence."

Elsewhere in the contract, the term "occurrence" is defined as "an <u>accident</u>, including continuous or repeated exposure to substantially the same general harmful conditions" (emphasis added). Because intentional torts are not "accidental," such torts are not occurrences for purposes of the insurance and are thus not covered. Second, Exclusion A of the contract excludes from coverage those injuries which are either "expected or intended from the standpoint of the insured." Furthermore, even if the policy purported to cover intentional torts, Alabama law prohibits indemnification of such as contrary to public policy. *See, e.g., Price-Williams Associates, Inc., et al., v. Nelson, et al.*, 631 So.2d 1016 (Ala. 1994).

- Page 2 -

The question before this court is therefore whether the claims asserted in the Hammond action constitute intentional torts excluded from the AIC liability insurance policy. Generally, "the obligation of a liability insurer, under a policy requiring it to defend its insured in an action brought by a third party, is <u>determined by the allegation of the complaint</u> in such action." *Ladner & Co. v. So. Guaranty Ins. Co.*, 347 So.2d 100, 102 (Ala. 1977)("Ladner")(emphasis added). However, a court "should liberally construe the complaint in the underlying action and may look to facts outside the allegation which may be proved by admissible evidence." *Id.*

In the Hammond action, plaintiff alleges that Lloyd and Bonnie Anderson feared that the auction of their Georgia home would not garner a bid sufficient to cover the outstanding balance on their mortgage. To prevent this, they allegedly solicited Hammond to bid a minimum dollar amount secretly on their behalf, while allegedly telling her that she would not actually have to purchase the home if she became the successful bidder. Furthermore, Hammond alleges that NAG participated in this sham, and that when her bid became the successful bid, NAG fraudulently induced her to sign a contract for the home's purchase, while simultaneously representing to her that she would not really have to consummate the purchase. The Andersons and NAG later refused to return Hammond's "earnest money" in the amount of $64,500, which she voluntarily paid NAG after the auction and which she allegedly misunderstood merely to be part of the scheme. Hammond maintains that the Andersons and NAG

repeatedly represented to her that the entire bogus transaction was legal, while knowing that such was illegal under Georgia law.

AIC points out that Hammond's complaint does not "mince words":

> These statements... were false, known by Defendants Anderson to be false when made, and were made with the intent to deceive the Plaintiff... [NAG] was aware of the statements... and participated, and acquiesced in the making of said statements to your Plaintiff well knowing that the statements were false and fraudulent. [NAG represented] that it was legal and acceptable for her to bid on behalf of the [Anderson] Defendants, [and NAG] knew these statements to be false and fraudulent, and the said statements represent a misrepresentation with the intent to deceive."

*Complaint*, ¶¶ 7 and 8.

NAG argues that even if Hammond was harmed by the auction transaction, NAG and its employees did not intend such harm. They have filed affidavits to support this claim. Despite NAG's denial, however, the court agrees with AIC that "the fact that the insured denies it intentionally defrauded the plaintiff does not change the fact that the plaintiff <u>accuses</u> the insured of intentional fraud. What is material to coverage is the nature of plaintiff's claim and not the insured's denial of that claim." *Reply Brief in Support of Summary Judgment*, at 3. According to the Supreme Court of Alabama, the fact that the insured "filed an affidavit denying the allegations in the complaint in no way affects the nature of the plaintiff's claim for an intentional tort, and certainly, it has no bearing on [the insured's] responsibility to defend or indemnify." *Tapscott v. Allstate Ins. Co.*, 526 So.2d 570, 575 (Ala. 1988)("Tapscott"). NAG's denial of intent to harm simply isn't relevant to this

declaratory judgment case. Otherwise, the court would have to determine NAG's actual intent, and that would require the court impermissibly to decide substantive issues in the underlying Hammond action. *See, e.g., English, et al., v. Alfa Mutual Ins. Co.*, 554 So.2d 1021 (Ala. 1989).

If Hammond's complaint was for negligent misrepresentation, a cause of action that is viable under Alabama law, the situation might be different. Even if NAG's actual intent were at issue, federal courts interpreting Alabama law have found that "intentional wrongs" may include intentionally doing some act which reasonable and ordinary prudence would indicate is likely to result in injury. *American & Foreign Ins. Co., et al., v. Colonial Mortgage Co., Inc., et al.*, 936 F.2d 1162, 1166 (11th Cir. 1991)("Colonial Mortgage"); *St. Paul Insurance Companies v. Talladega Nursing Home, Inc., et al.*, 606 F.2d 631, 634 (5th Cir. 1979)("St. Paul"). NAG is a corporation engaged in the business of conducting auctions, and as such, it is charged with having at least general familiarity with the laws governing its business. Reasonable and ordinary prudence would have prevented NAG, even absent intent to defraud, from making the alleged misrepresentations to Hammond. Under *Colonial Mortgage* and *St. Paul*, NAG's alleged tortious acts would be deemed intentional torts since they involve intended acts which "reasonable and ordinary prudence would indicate likely to result in injury." *St. Paul, at 634*.

There is no indication in the record that Hammond is asserting any theory of liability other than an intentional

wrong.  As a result, the conduct alleged in the underlying Hammond action is not covered by the contract of liability insurance between AIC and NAG.

AIC additionally argues that the activities alleged in the Hammond action would not be covered by NAG's policy for a second reason.  The insurance contract contains a Professional Services exclusion which states

> With respect to any professional service shown in the Schedule, this insurance does not apply to "bodily injury," "property damage," "personal injury," or "advertising injury" due to the rendering or failure to render any professional service.

This "Endorsement," or amendment, to the insurance contract contains a schedule describing professional services to be excluded, and includes "AUCTIONEERS - SALES CONDUCTED AWAY FROM THE INSURED'S PREMISES."  Because the tortious acts alleged in the Hammond action occurred at the auctioned property and home itself, and not on NAG's premises, the court finds that the auction in question would have constituted "professional services" within the meaning of the exclusion.  As a result, Ms. Hammond's allegations of tortious conduct, whether intentional or unintentional, are not covered by the insurance agreement in question.  Therefore, due to the professional services exclusion alone, AIC is not required either to defend or indemnify NAG in that action.

Under *Ladner* and *Tapscott*, if the complaint is later amended to include claims which are covered under the insurance policy, AIC may consequently be required to defend and indemnify for those claims.  See *Ladner, at 104* (insurer that refuses to defend

does so at its own peril); *Tapscott, at 575*. To guard against the danger that insured defendants and the plaintiffs suing them will not collusively amend the underlying complaint, or even settle, in order to gain coverage, insurance companies often have an incentive to provide a defense, despite the fact that they are not required to do so. In the Hammond action, the interests of both NAG and Hammond are aligned to the extent that they both stand to gain if the contract of liability insurance is found to cover Hammond's claims. The court understands that AIC may therefore have sufficient motivation to defend NAG in the Hammond suit. However, as presently postured, the Hammond claims do not charge NAG with acts covered in the policy, and therefore AIC has no present obligations.

Furthermore, whatever AIC's present or future obligations under its insurance agreement with NAG, the clear language of the contract precludes any duty to indemnify NAG for any punitive damages for which NAG may become liable in the Hammond action. The policy plainly states: "[I]t is understood and agreed that this policy excludes any claim for punitive or exemplary damages whether arising out of acts of the insured, insured's employees or any other person." Even if Hammond later amends her complaint against NAG so as to trigger AIC's duty to defend and indemnify, AIC is not required by the insurance agreement to indemnify NAG for any punitive damages arising from such claims.

Finally, the court has before it two additional motions by AIC, requesting that this court strike from evidence 1) certain evidentiary materials filed by NAG and 2) NAG's "Response to

Acceptance's Reply Brief," filed without leave outside the guidelines established by this court's submission order, as amended on July 28, 1998. For the reasons discussed above, the court finds that the affidavits and video tape filed into evidence by NAG are irrelevant to the present action, because they attempt to persuade the court regarding the truth or falsity of the claims in the underlying Hammond action. As discussed above, the parties may not litigate the underlying action in the context of the present case. The court further finds nothing in the record indicating that NAG either requested or was granted leave to deviate from the directions of this court's submission order. The court notes, however, that even if all such evidence and argument were taken into consideration as submitted, the court would nevertheless be compelled to reach the same conclusion that the Hammond action, as presently postured, does not present claims requiring AIC either to defend or indemnify NAG.

## Conclusion

For the reasons discussed above, the court finds that AIC's motion for summary judgment is due to be granted, and AIC's motion to strike certain affidavits and evidentiary submissions of NAG is due to be granted. Finally, AIC's motion to strike NAG's "Response to Acceptance's Reply Brief" is due to be granted. A separate and appropriate order will be entered.

DONE this 30th day of October, 1998.

WILLIAM M. ACKER
UNITED STATES DISTRICT JUDGE